1

2

3

4

5

6                        UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
7                                  AT SEATTLE

8   IRA DECHANT,

9                     Plaintiff,            Case No. 2:13-CV-01617-RSL-BAT

10      v.                                  **REPORT AND
                                            RECOMMENDATION**
11  KING COUNTY JAIL, *et. al.*,

12                    Defendants.

13      *Pro se* plaintiff Ira Dechant brings this 42 U.S.C. § 1983 action alleging that his First and

14  Fourteenth Amendment rights were violated because (**1**) he was wrongfully placed on a

15  telephone restriction and was unable to contact the attorney for his CPS dependency matter, the

16  Ombudsman's Office regarding complaints, or the attorney for his forfeiture case; and (**2**) his

17  mail was wrongfully monitored and confiscated by King County Correctional Facility ("KCCF")

18  employees.  Defendants move for summary judgment and have demonstrated that Mr. Dechant

19  was placed on phone deadlock and had his written communications monitored because he was

20  arranging via telephone and mail to have a witness in pending criminal cases murdered.  **Dkt. 27**.

21  The Court recommends **SUBSTITUTING** King County for King County Jail as a defendant and

22  **GRANTING** defendants' motion for summary judgment because they have shown there is no

23  genuine dispute as to any material fact such that they are entitled to judgment as a matter of law

REPORT AND RECOMMENDATION - 1

1   and, regardless, the individual defendants are also entitled to qualified immunity.

2   **BACKGROUND**

3      On January 8, 2013, Mr. Dechant was booked into KCCF for investigation on drug,

4   firearm, and violation of community custody charges.  Dkt. 32, at 2 (hereinafter "Womack

5   Decl."); *see State v. Dechant*, No. 13-1-00737-8 (King Cnty. Super. Ct., opened Jan. 10, 2013).

6   He was eventually convicted of those counts after a bench trial, and also was convicted after a

7   jury trial of attempted murder with a firearm enhancement, solicitation to commit first-degree

8   murder, and conspiracy to commit first-degree murder.  *See State v. Dechant*, No. 13-1-00964-8

9   (King Cnty. Super. Ct., filed Feb. 1, 2013).  The attempted murder charges stemmed from Mr.

10  Dechant's attempt, while detained at KCCF, to have a material witness in pending criminal cases

11  murdered.  The means by which defendants investigated Mr. Dechant's plot to murder a witness

12  and prevented harm to the witness and others—monitoring/limiting his telephonic and written

13  communications—are the subject of Mr. Dechant's current civil-rights complaint.

14     Defendants are King County Jail, Jail Director Claudia Balducci, Major Corinna Hyatt,

15  Sergeant Catey Hicks, and Commander Gordon Karlsson.  On January 20, 2013, Sergeant Hicks

16  was informed by a jail sergeant that Mr. Dechant had solicited another inmate to murder one of

17  the witnesses in Mr. Dechant's pending criminal cases.  Dkt. 30, at 2 (hereinafter "Hicks,

18  Decl.").  Defendant Sergeant Hicks contacted the Seattle Police Department ("SPD"), which

19  immediately began an investigation.  *Id.*  Jail staff assisted the SPD by monitoring Mr. Dechant's

20  mail and phone calls.  *Id.*  During the course of the SPD investigation, Mr. Dechant utilized jail

21  phones several times to coordinate with an outside person, and communicated about the

22  impending crime via outgoing jail mail and in a KCCF visitation booth.  *Id.*  For example, in one

23  confiscated letter, Mr. Dechant asked the recipient to deal with the "snitch": "I need him washed

REPORT AND RECOMMENDATION - 2

1   with gas and dried with a match so he can't testify." Hicks Decl., Exh. A, at 12.

2       The SPD detective and a King County Prosecutor requested that Mr. Dechant be placed

3   on phone deadlock for the safety of the victims and the witnesses in the pending criminal cases,

4   and to prevent him from orchestrating more crimes from jail. Hicks Decl., at 2; Womack Decl.,

5   at 3. Defendant Major Hyatt approved the request for a phone deadlock. Hicks Decl., at 2–3.

6   On January 29, 2013, Mr. Dechant was placed on phone deadlock and his housing classification

7   was changed to Administrative Segregation, where inmates on phone deadlock have access to

8   telephones only for the purpose of contacting legal counsel. *Id.* at 3. Since that time, Mr.

9   Dechant has received monthly face-to-face reviews with classifications staff at which he has

10  challenged the continuing phone deadlock and has appealed those decisions several times. *Id.* at

11  3.

12      There is no dispute that defendants monitored Mr. Dechant's mail and read his

13  correspondence in order to prevent him from arranging the murder of a witness. *Id.* at 3–4.

14  Letters that referenced his murder plans were confiscated and later used as evidence in Mr.

15  Dechant's criminal trial. *Id.* Mr. Dechant has not in any specific or supported way challenged

16  defendants' proposition that other, non-criminally-connected mail was sent out as usual. *Id.* at 4.

17  In Mr. Dechant's response brief he asserts, and defendants do not deny, that jail officials may

18  have confiscated grievances to provide to the Washington State Patrol for a handwriting

19  analysis.[1]  Dkt. 36, at 11–12; Dkt. 39, at 6–7.

20                                  **DISCUSSION**

21      Mr. Dechant argues (**1**) the phone deadlock violated his rights to due process and to

22  _____
[1] Defendants concede that if Mr. Dechant's grievances were indeed being held in evidence, it
would be inappropriate to find that he failed to exhaust his administrative remedies as required

23  by the Prison Litigation Reform Act ("PLRA"). Dkt. 39, at 6–7. Defendants have therefore
withdrawn their PLRA exhaustion argument. *Id.*

REPORT AND RECOMMENDATION - 3

1  meaningful access to the courts, and **(2)** monitoring and confiscating his mail violated his rights

2  to send and receive mail and to meaningful access to the courts.  He has failed to raise a genuine

3  dispute of material fact and defendants are therefore entitled to judgment as a matter of law.

4  **A.     Right to Due Process – Phone Deadlock**

5         Mr. Dechant argues that placing him on a phone deadlock in administrative segregation

6  amounted to punishment, i.e., a substantive due process violation of his rights as a pretrial

7  detainee, because it was not reasonably related to a legitimate penological interest.  *See Bell v.*

8  *Wolfish*, 441 U.S. 520, 539 (1979).  This argument is meritless.

9         Mr. Dechant was placed on a phone deadlock because he was using the phone, mail, and

10 conversations with another inmate to further a plot to murder a material witness.  Preventing Mr.

11 Dechant from having someone killed and ensuring that pending criminal cases are not

12 compromised constitute legitimate penological interests.  Moreover, there is no credible

13 indication in the record that the phone deadlock was imposed with an express intent to punish

14 rather than to keep a witness from being murdered.  *See Bell*, 441 U.S. at 535; *Demery v. Arpaio*,

15 378 F.3d 1020, 1028 (9th Cir. 2004).

16 **B.     Right to Send and Receive Mail – Monitoring/Confiscating Mail**

17        Mr. Dechant argues that monitoring and confiscating his mail violated his right to send

18 and receive mail.  This argument is meritless.  Defendants' monitoring and confiscation of Mr.

19 Dechant's mail related to criminal activity—even presuming defendants retained some of his

20 handwritten grievances to show consistency with other written threats—was reasonably related

21 to the legitimate penological interests of keeping Mr. Dechant from having a witness murdered

22 and protecting the integrity of pending criminal cases.  *See Turner v. Safley*, 482 U.S. 78, 89

23 (1987).

REPORT AND RECOMMENDATION - 4

**C.      Right to Meaningful Access to the Courts – Phone Deadlock and Monitoring/Confiscating Mail**

Mr. Dechant argues that the phone deadlock and the monitoring and confiscation of his mail (and certain grievances) violated his right to meaningful access to the courts. This argument has no merit.

The federal constitutional right to meaningful access to the courts is limited to cases in which inmates "attack their sentences, directly or collaterally, and . . . challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see Simmons v. Sacramento County Superior Court*, 318 F.3d F.3d 1156, 1160 (9th Cir. 2003) (explaining that "a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim"). Moreover, to establish a violation of the right to meaningful access to the courts, a plaintiff must—with respect to an existing or contemplated attempt to challenge his sentence or conditions of confinement—demonstrate "actual injury," such as the inability to present a claim or to meet a filing deadline. *Lewis*, 518 U.S. at 351–52.

Mr. Dechant refers to three ways his meaningful access to the courts was denied: (1) a delay in adding the Ombudsman's phone number to his call list; (2) being told that his criminal attorney must put his CPS attorney's number on the call list and receiving correspondence from his CPS attorney on April 13, 2013, though the letter was dated April 4, 2013; and (3) having no way to put his attorney for a forfeiture action on the call list and having no knowledge of that attorney's address. Dkt. 9, at 3–4; Dkt. 36, at 3–11. None of these instances qualify as challenges to Mr. Dechant's sentence or conditions of confinement: (1) Mr. Dechant's contact with the Ombudsman is extra-judicial; (2) the dependency proceeding addressed his parental rights; and (3) the forfeiture proceeding, which remains pending, involves $10,900 seized from

REPORT AND RECOMMENDATION - 5

1    him by the SPD, *see* Dkt. 31 (hereinafter "Gappert Decl."), at 1–2.  Neither does Mr. Dechant

2    plausibly allege actual injury in the form of missed deadlines or an inability to bring claims.

3    First, Mr. Dechant was able to add to his call list the Ombudsman, who then investigated his

4    complaint and informed him of how his dependency attorney could be added to the call list.  Dkt.

5    36, at 9.  Second, Mr. Dechant has not plausibly alleged that his inability to immediately contact

6    his dependency counsel via telephone caused a miscommunication let alone occasioned missed

7    deadlines or foreclosed claims.[2]  Third, the SPD has not proceeded with the forfeiture action

8    while Mr. Dechant has been in custody.  Gappert Decl., at 1–2.

9          To the extent Mr. Dechant argues that was denied meaningful access to the courts by the

10   confiscation of grievances, this argument has been mooted by defendants' withdrawal of their

11   argument regarding PLRA exhaustion and the Court's current consideration of the concerns

12   raised in his grievances.  Dkt. 39, at 6–7.  To the extent Mr. Dechant argues that jail officials'

13   very act of confiscating grievances constituted a procedural due process violation, inmates lack a

14   separate constitutional entitlement to a prison grievance procedure.  *Ramirez v. Galaza*, 334 F.3d

15   850, 861 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  Defendants'

16   alleged confiscation of Mr. Dechant's grievances creates no actionable § 1983 claim.[3]

17   _____

18   [2] For example, in her April 4, 2013 letter, Mr. Dechant's dependency counsel noted that on April
     3, 2013, she had received his letter follow-up to their visit and would proceed with the plan that
     all parties agreed was in the best interests of his daughter—that Mr. Dechant's daughter would

19   be adopted by his sister.  Dkt. 36, at 6.  Dependency counsel said that if he changed his mind,
     Mr. Dechant could contact her either in writing or through calling his criminal attorney.  *Id.*  It's

20   clear that Mr. Dechant had for over a month been communicating with his dependency attorney
     by calling his criminal attorney.  *See* Dkt. 9-1, at 6.  Mr. Dechant does not allege that he meant to

21   change his stated wishes in the dependency proceeding and does not suggest he sought to amend
     the dependency decision but was unable to do so due to his limited phone access or mail

22   privileges.
     [3] The district courts that have determined that a § 1983 plaintiff could bring a constitutional

23   claim that prison officials inadequately responded to a grievance have done so based upon the
     possibility that the grievance reviewers may have inflicted "cruel and unusual" punishment, e.g.,

1       To the extent Mr. Dechant alleges that the phone deadlock and mail

2 monitoring/confiscation has prevented him from litigating his current civil-rights action, such an

3 assertion is unsupported and is contradicted by the manner in which he has substantively litigated

4 this case in federal court. *See, e.g.*, Dkt. 38 (noting that plaintiff's assertions of an inability to

5 litigate were belied by his immediate response to the Court's order, statement that he was

6 sending out "many letters" seeking legal representation, and his substantive brief in opposition to

7 defendants' motion for summary judgment).

8 **D.**     **Respondeat Superior Liability of Director Claudia Balducci**

9       Director Balducci cannot be held liable in a § 1983 action on the theory of respondeat

10 superior. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Mr. Dechant has failed to

11 allege any facts showing how Director Balducci caused or personally participated in causing the

12 harm alleged.

13 **E.**     **Qualified Immunity**

14       The individual defendants—Director Balducci, Major Hyatt, Sergeant Hicks, and

15 Commander Karlsson—should also be afforded qualified immunity because no reasonable jail

16 official would have understood that it would amount to a constitutional violation to limit Mr.

17 Dechant's active use of the phone and mail in a murder plot, or to provide handwritten

18 grievances to authorities to substantiate his culpability in an attempt to murder a witness. *See*

19 *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

20

21 _____

22 where medical personnel ignore known serious medical needs presented within an inmate appeal.
*See Stickle v. Cook*, 2014 WL 794339, at *9 (E.D. Cal. Feb. 27, 2014) (discussing cases). No
suggestion of cruel and unusual punishment exists here where it is undisputed that any

23 confiscated grievances were used for a handwriting comparison, thereby demonstrating that Mr.
Dechant had indeed sent letters directing that a witness be murdered.

REPORT AND RECOMMENDATION - 7

**F.      Liability of King County Jail**

Defendants are correct to note that in a legal action involving King County, the county itself is the only legal entity capable of being sued.  *See, e.g.*, *Nolan v. Snohomish County*, 802 P.2d 792, 796 (Wash. Ct. App. 1990).  Nonetheless, it is undisputed that the King County Executive was served with the Amended Complaint and has substantively responded to the question of King County's liability.  The Court therefore recommends that King County be substituted for King County Jail  as a defendant and summary judgment be granted in favor of King County because Mr. Dechant has failed to identify an unconstitutional policy, practice, or custom of wrongfully placing inmates on phone deadlock, wrongfully monitoring their mail, or denying inmates meaningful access to the courts.  *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993).

## CONCLUSION

The Court recommends **SUBSTITUTING** King County for King County Jail as a defendant and **GRANTING** defendants' motion for summary judgment, **Dkt. 27**, because there is no genuine dispute of material fact such that they are entitled to judgment as a matter of law and, regardless, the individual defendants are also entitled to qualified immunity.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order.  Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **July 24, 2014.**  The Clerk should note the matter for **July 25, 2014**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days

REPORT AND RECOMMENDATION - 8

1   after being served with the objections.  A party filing an objection must note the matter for the

2   Court's consideration 14 days from the date the objection is filed and served.  The matter will

3   then be ready for the Court's consideration on the date the response is due.  Objections and

4   responses shall not exceed twelve (12) pages.  The failure to timely object may affect the right to

5   appeal.

6        DATED this 3rd day of July, 2014.

7

8

9        BRIAN A. TSUCHIDA
     United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 9